1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

7
8
9
10
11
12
13

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD<br>OF TEAMSTERS, AIRLINE DIVISION, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLEGIANT TRAVEL COMPANY,<br>and ALLEGIANT AIR, LLC,<br><br>Defendants. | Case No. 2:14-cv-00043-APG-GWF<br><br>**ORDER**<br><br>**Motion to Compel - #97** |

14    This matter is before the Court on Defendants' Motion to Compel Responses to Written

15 Discovery (#97), filed on September 5, 2014.  Plaintiff filed its Response (#105) on September 22,

16 2014 and Defendants filed their Reply (#110) on September 29, 2014.  The Court conducted a

17 hearing on this motion on October 9, 2014.

18                                    **BACKGROUND**

19    Plaintiff International Brotherhood of Teamsters, Airline Division/Airline Professionals

20 Association of the International Brotherhood of Teamsters, Local Union No. 1224 (hereinafter "IBT"

21 or "Union") alleges that it is the exclusive bargaining "representative," as defined by the Railway

22 Labor Act ("RLA"), 45 U.S.C. § 151, Sixth, of the pilots employed by Defendant Allegiant Air.

23 *Complaint (#1),* ¶ 4.  The Union alleges that it was certified as the Allegiant pilots' exclusive

24 bargaining representative by the National Mediation Board ("NMB") on August 24, 2012.  ¶¶ 4, 8.

25 Prior to that date, the pilots were represented by the "Allegiant Air Pilots Advocacy Group"

26 ("AAPAG").  ¶ 8.  In 2010, the AAPAG and Allegiant allegedly negotiated changes to a collective

27 bargaining agreement titled "Pilot Work Rules" (PWR).  The Pilot Work Rules "contained detailed

28 provisions governing seniority, compensation, training, work scheduling, vacation and paid time off,

leaves of absence, pay during illness, grievance processing, discipline, uniforms, and automation." ¶ 12.

The Union alleges that after it replaced the AAPAG as the exclusive bargaining representative of the pilots, it advised Allegiant of its intention to negotiate a new collective bargaining agreement governing the pilots' rates of pay, benefits, work rules and other terms of employment.  The Union and Allegiant have been in contract negotiations since December 2012.  *Id.*, ¶ 15.  The Union alleges that Allegiant has violated the Railway Labor Act and breached the pre-existing collective bargaining agreement by unilaterally eliminating or changing specific provisions of the Pilot Work Rules described in ¶ 12 of the complaint, and by announcing its intention to unilaterally implement an entirely new and dramatically different flight scheduling system.  The Union requests that the Court require Allegiant to restore and maintain the provisions of the Pilot Work Rules while the parties negotiate a new agreement, and/or engage in proceedings before the National Mediation Board.  The Union also requests that Allegiant be ordered "to make whole each Allegiant pilot harmed by Defendants' breaches of the Allegiant-AAPAG pilot collective bargaining agreement and status quo."  *Complaint (#1), pg. 13.*

The Union filed its motion for preliminary injunction on March 3, 2014.  In its opposition to that motion, Allegiant denied that the AAPAG was the pilots' collective bargaining representative or that the Pilot Work Rules constitute a binding collective bargaining agreement.  Allegiant alleged that when the Union applied in June 2012 to represent the pilots, it certified to the National Mediation Board that the pilots were unrepresented and not subject to a collective bargaining agreement; and that based on this representation, the National Mediation Board conducted a representation election.  Allegiant further alleges that the Union told the pilots they must vote for the Union because they were not represented and did not have a valid collective bargaining agreement.  Allegiant also argued that the Pilot Work Rules state that it is not a contract and that any disputes as to how it is interpreted are decided exclusively by Allegiant.  *Opposition to Motion for Preliminary Injunction (#53), pgs. 1-2.*

On July 22, 2014, the Court granted the Union's motion for preliminary injunction.  *Order (#79).*  The Court noted that the Railway Labor Act "defines the term 'representative' as 'any person

or persons, labor union, organization, or corporation designated by either a carrier or group of carriers or by its or their employees to act for it or them." *Order (#79), pg. 11*. The Court stated:

> Under this definition, AAPAG was the pilots' representative. The pilots voted to create AAPAG. The preamble to AAPAG's Constitution and Bylaws states that the Constitution and Bylaws "provide [] the mechanism through which all member pilots are represented both individually and collectively." One of AAPAG's objectives, as stated in its Constitution and Bylaws, is "to make, determine, negotiate, maintain and/or improve employment agreements covering rates of compensation, hours of employment, work rules, benefits and working conditions for the members of the Association." This language certainly indicates that the pilots designated AAPAG to act for them. On Allegiant's side, the Chief Executive Officer ("CEO"), Maury Gallagher, stated in an open letter dated December 17, 2009 to Allegiant's pilots that "Management has a history of compromise with AAPAG" and that "Allegiant pilots have made significant gains in every new contract since 2001," indicating that at least the CEO believed that Allegiant and AAPAG had formed binding contracts for the pilots. Most importantly, the PWR, which was executed by Allegiant's Vice President of Flight Operations, recognizes AAPAG as "the elected and representative body of the pilot group of Allegiant Air."

*Order (#79), pgs. 11-12.*

The Court found that statements made by the Union before it was certified as the pilot's bargaining representative were not binding because the Union "did not yet represent the pilots and its statements cannot be imputed to them." The Court further stated that "[t]o the extent IBT made any post-certification statements concerning AAPAG's pre-certification status, IBT was not present during AAPAG's creation or during the years of AAPAG's relationship with Allegiant. It is thus dubious that IBT had sufficient information to determine whether AAPAG was the pilots' RLA representative, nor could IBT's statements serve to retroactively revoke AAPAG's prior representative status." *Order (#79), pg. 12.* The Court applied the same logic "to the IBT's application for NMB certification, which failed to indicate that AAPAG was the pilots' representative or that the pilots had an extant agreement." The Court stated that "[t]his application was obviously prepared before the IBT was certified. That no one corrected the IBT's on-site posting of the NMB application is of little moment, as it is unclear how many people saw or read the posting, and the presumptive focus of those who did read it would have been to make sure that the IBT was acting properly to become certified rather than whether the IBT had misstated AAPAG's

1  status." *Id.*

2       The Court also rejected Allegiant's arguments that statements in a March 2012 AAPAG

3  union organizing pamphlet demonstrated AAPAG's recognition that it did not have a binding

4  agreement with Allegiant.  The Court stated that the parties' subjective characterization of a

5  document is not dispositive and that "it would be unreasonable to conclude that these statements by

6  AAPAG served to repudiate the PWR such that is [sic] was no longer binding after March 2012."

7  *Id. pg. 13.*  The Court also rejected Allegiant's argument that its dealings with AAPAG did not

8  convert AAPAG into an RLA representative, noting that the argument "conveniently ignores that

9  Allegiant did precisely that in the PWR, by recognizing AAPAG as "'the elected and representative

10  body of the pilot group of Allegiant Air.'"  *Id.*  The Court also held that the statements in the PWR,

11  that it did not give rise to a contract or promise of employment for any period of time, did not refute

12  its status as an RLA agreement.  *Id. pg. 14.*

13       Allegiant continues to assert that AAPAG was not the collective bargaining representative for

14  the pilots and that the Pilot Work Rules were not a binding collective bargaining agreement.  Prior to

15  the injunction hearing, Allegiant served interrogatories and requests for production of documents

16  relating to its defenses.  The Union responded to Allegiant's discovery requests after the injunction

17  hearing.  The Union objected to many of the discovery requests.  In some instances, the Union

18  referred the Defendant to documents it produced during the injunction hearing.  In other instances, it

19  indicated that it would supplement its discovery responses as it obtained additional documents or

20  information.  Allegiant argues that the Union's objections are invalid and that the Union has not

21  produced relevant and responsive information and documents within its knowledge, possession,

22  custody or control.  It therefore seeks an order compelling further responses.  The disputed

23  interrogatories and requests for production are set forth in the Appendix to this order.

24       Allegiant also moved to compel the Union to produce documents relating to the alleged harm

25  or damages suffered by individual pilots as a result of Allegiant's elimination or modification of the

26  Pilot Work Rules.  Following the October 9, 2014 hearing, the parties reached an agreement

27  regarding the scope of the damages or restitution the Union is seeking on behalf of the pilots.  The

28  parties also agreed on the information and documents the Union would produce with respect to those

4

1   claims. *See Joint Status Report Regarding Damages Issue (#116).*

2   **DISCUSSION**

3   Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain

4   discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.

5   Relevancy under the rule is liberally construed. *Philips v. Clark County School District*, 2012 WL

6   135705, *4 (D.Nev. 2012), citing *E.E.O.C. v. Caesars Entertainment, Inc.*, 237 F.R.D. 428, 431-32

7   (D.Nev. 2006). The party opposing discovery has the burden of showing that the discovery is overly

8   broad, unduly burdensome or not relevant. *Graham v. Casey's General Stores,* 206 F.R.D. 251,

9   253–4 (S.D.Ind. 2000). To meet this burden, the objecting party must specifically detail the reasons

10  why each request is irrelevant. *Id.,* citing *Schaap v. Executive Indus., Inc.,* 130 F.R.D. 384, 387

11  (N.D.Ill. 1990); *Walker v. Lakewood Condominium Owners Assoc.,* 186 F.R.D. 584, 587 (C.D.Cal.

12  1999). When a request for discovery is overly broad on its face or when relevancy is not readily

13  apparent, however, the party seeking the discovery has the burden to show the relevancy of the

14  request. *Rezaq v. Nalley,* 264 F.R.D. 653, 656 (D.Colo. 2010).

15  "A party is generally charged with knowledge of what its agents know, or what is in records

16  available to it, or even information others have given to it on which it intends to rely in its suit. A

17  party cannot limit its interrogatory answers to matters within its own knowledge and ignore

18  information immediately available to it or under its control." *F.D.I.C. v. Halpern*, 271 F.R.D. 191,

19  193 (D. Nev. 2010), citing 8B Wright, Miller & Marcus, *Federal Practice and Procedure* § 2177

20  (3rd Ed. 2010) (and cases cited therein). Likewise, "[a] party must produce nonprivileged relevant

21  documents in response to a request for production that are in the producing party's possession,

22  custody or control." *Id.*, citing Fed.R.Civ.Pro. 34(a)(1).

23  Although the preliminary injunction order rejected Allegiant's arguments that AAPAG was

24  not the pilot's collective bargaining representative and the Pilot Work Rules were not a collective

25  bargaining agreement, the Court has not conclusively decided these issues. Without commenting on

26  what evidence, if any, might be sufficient to overcome the Court's preliminary determination,

27  evidence showing that the AAPAG's officers or the Allegiant pilots did not consider the AAPAG to

28  be the pilots' collective bargaining representative and did not consider the Pilot Work Rules to be a

5

binding agreement are relevant to the defenses raised by Allegiant.  Likewise, evidence showing that the AAPAG did not conduct itself in the manner of a union, such as by requiring and collecting dues from members, is also relevant and potentially admissible.

Allegiant's interrogatories request all communications between the Union and the Allegiant pilots during the Union's organizing drive, and all communications between the Union and any officer or representative of AAPAG.  *See Interrogatory Nos. 8 and 9.*  Allegiant also requests "all documents referring or relating to AAPAG and/or the PWR, including but not limited to: . . ." *Request No. 9.*  These requests are over broad on their face to the extent they are not limited to documents relating to AAPAG's representative status or whether the Pilot Work Rules was a binding collective bargaining agreement.  Although most of the subparts in Request No. 9 do relate to these issues, subparts (k), (l) and (m) broadly requests all minutes of AAPAG membership and committee meetings without any limitation on the subject matter discussed.  While the minutes may contain information relevant to Allegiant's defenses, they may also contain other information such as the identities of individual AAPAG members that may be protected from disclosure pursuant to the members' First Amendment right of association.

The AAPAG is apparently a defunct organization.  There is no evidence that the Union has possession, custody or control of all of AAPAG's records.  In its response to Request No. 9, however, the Union stated that it possesses "certain documents that are covered by this Request."  To the extent that the Union possesses AAPAG documents relevant to its status as the pilots' collective bargaining representative or to whether the Pilot Work Rules were a binding agreement that have not already been produced to Allegiant, such documents should be produced absent a valid assertion  of privilege.

**A.    Union's Objection Based on First Amendment Privilege.**

Allegiant's Interrogatory No. 3 requests the identities "of all individuals who were members of the Plaintiff's Allegiant Air pilots organizing committee."  As discussed above, Request No. 9 requests production of all documents referring or relating to AAPAG and/or the PWR, including records relating to AAPAG's dues and the minutes of AAPAG's membership meetings and committee meetings.  Request No. 15 seeks all documents relating to the Union's allegation that the

1   AAPAG collected dues from its member pilots and represented their interests against Allegiant.

2       The Union objected to Interrogatory No. 3 and Request Nos. 9 and 15, on the grounds that

3   they are "calculated to subject the Allegiant pilots to harassment and intimidation, in that it has the

4   effect of invading, intruding into and chilling their statutorily protected rights under the RLA and

5   their privacy interests."  *See Motion (#97), Exhibit 1, Response to Request No. 9.*  The Union

6   expanded upon this objection in its response to Allegiant's motion to compel.  *See Response (#105),*

7   *pgs. 9-10.*  The Union states that its objection is predicated on the First Amendment right of freedom

8   to assemble or associate, which includes the right of the members of an association to keep their

9   membership anonymous or private, absent the showing of a compelling state interest to overcome

10  that right.  In this regard, the Union cites *NAACP v. State of Alabama, ex rel. Patterson*, 357 U.S.

11  449, 462, 78 S.Ct. 1163 (1958) in which the Supreme Court struck down a state court order holding

12  the NAACP in contempt for refusing to provide its membership list to the state.  The Court stated

13  that the NAACP sufficiently demonstrated the chilling effect that the disclosure of its members'

14  identities would have on the exercise of their First Amendment rights if their identities were

15  disclosed.  The Court rejected the state's argument that "whatever repressive effect compulsory

16  disclosure" had on the association's members "follows not from *state* action, but from *private*

17  community pressures."  The Court stated that "[t]he crucial factor is the interplay of governmental

18  and private action, for it is only after the initial exercise of state power represented by the production

19  order that private action takes hold."  357 U.S. at 463, 78 S.Ct. at 1172.

20      Courts since *NAACP v. State of Alabama, ex rel. Patterson* have held that the First

21  Amendment privilege may apply even if all of the litigants are private entities.  *Perry v.*

22  *Schwarzenegger*, 591 F.3d 1126, 1140, n. 5 (9th Cir. 2010), citing *Grandbouche v. Clancy*, 825 F.2d

23  1463, 1466 (10th Cir. 1987) and *Adolph Coors Co. v. Wallace*, 570 F.Supp. 202, 208 (N.D.Cal.

24  1983)."  In *Grandbouche*, the plaintiff sued individual IRS employees who allegedly infiltrated an

25  organization that espoused dissident views on the federal income tax system.  The defendants

26  requested production of the organization's membership list, the mailing list for recipients of its

27  publications, and a list of members or others who attended the organization's convention.  In holding

28  that the First Amendment privilege applied, the court stated that the magistrate's order compelling

7

discovery and the trial court's enforcement of that order provided the requisite governmental action

to invoke First Amendment scrutiny.  The court in *Adolph Coors Co. v. Wallace*, 570 F.Supp. at 208,

stated that "a private litigant is entitled to as much solicitude to its constitutional guarantees of

freedom of association when challenged by another private party, as when challenged by a

government body."

A claim of First Amendment privilege is subject to a two part framework.  The party

asserting the privilege must demonstrate a *prima facie* showing of arguable First Amendment

infringement.  *Perry v. Schwarzenegger*, 591 F.3d at 1140, citing  *Brock v. Local Union 375,*

*Plumbers Int'l Union of America*, 860 F.2d 346 (9th Cir. 1988) ("*Plumbers I"*).  The party must

show that disclosure would result in (1) harassment, membership withdrawal, or discouragement of

new members, or (2) other consequences which objectively suggest an impact on, or chilling of

members' associational rights.  The court in *Brock* noted that "[m]any courts have grappled with the

sufficiency of the party's *prima facie* showing.  (Citations omitted).  The court stated:

> A factor emphasized in each of those decisions is the need for
> objective and articulable facts, which go beyond broad allegations and
> subjective fears.  The Supreme Court, in *Buckley v. Valeo*, seemed to
> suggest that a merely subjective fear of future reprisals is an
> insufficient showing of infringement of associational rights.  424 U.S.
> at 71-72, 96 S.Ct. at 660.  However, the *Buckley* court also recognized
> that "unduly strict requirements of proof could impose a heavy burden.
> . . ."  The Court therefore required that the "evidence offered need
> show only a reasonable probability that the compelled disclosure . . .
> subject [contributors] to threats, harassment, or reprisals from either
> Government officials or private parties.  *Id.* at 74, 96 S.Ct. at 661.  *See*
> *also Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S.
> 87, 93, 103 S.Ct. 416, 421, 74 L.Ed.2d 250 (1982); *In re Grand Jury*
> *Proceeding*, 842 F.2d at 1235-36; *O'Neal v. United States*, 601
> F.Supp. at 879.

*Dole v. Service Employees Union*, 950 F.2d 1456, 1460 (9th Cir. 1991) provides an example

of the type of evidence that suffices to establish the *prima facie* case.  In *Dole*, the union objected to

a Department of Labor subpoena for its membership meeting minutes which were sought pursuant a

government investigation into corruption by union officials.  The court held that the union satisfied

its *prima facie* case by showing that the members discussed sensitive and private topics during the

meetings and by producing two letters from union members stating that they would no longer attend

meetings if the minutes were disclosed to the government.

Once the party asserting the privilege makes the *prima facie* showing, the burden then shifts to the party seeking to compel disclosure to show (1) that the information sought is rationally related to a compelling interest, and (2) that the disclosure requirements are the least restrictive means of obtaining the desired information. *Perry v. Schwarzenegger*, 591 F.3d at1140, citing *Dole v. Service Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459-61 (9th Cir. 1991). *Perry* states the second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after a careful consideration of the need for such discovery. The court must determine whether the party seeking the discovery "'has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association.' *NAACP*, 357 U.S. at 463, 78 S.Ct. 1163." To implement this standard, the court balances the burdens imposed on the individuals and associations against the significance of the interest in disclosure to determine whether the interest in disclosure outweighs the harm. *Id.* The balancing may take into account the importance of the litigation; the centrality of the information sought to the issues in the case; the existence of less intrusive means of obtaining the information; and the substantiality of the First Amendment issues at stake. *Perry*, 591 F.3d at 1140-41. *Perry* further states:

> Importantly, the party seeking the discovery must show that the information sought is highly relevant to the claims and defenses in the litigation–a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1). The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable.

591 F.3d at 1141.

Other courts have provided varying formulations of the factors to be considered consistent with those identified in *Perry. See also Grandbouche v. Clancy*, 825 F.2d 1463,1466-67 (10th Cir. 1987); *Adolph Coors Co. v. Wallace,* 570 F.Supp.202, 208 (N.D.Cal. 1983); and *Christ Covenant Church v. Town of Southwest Ranches*, 2008 WL 2686860, *8 (S.D.Fla. 2008).

The Union also bases its objection to Allegiant's requests on decisions by the National Labor Relations Board (NLRB) and appellate decisions which state that it is an unfair labor practice for an employer to attempt to obtain the minutes of union membership meetings or the identities of

employees who have signed union representation cards, because of the chilling effect that such inquiries have on the employees' willingness to participate in representational efforts or activities. *See Berbiglia, Inc.*, 233 NLRB 1476, 1495 (1977); *NLRB v. Unbelievable, Inc.*, 71 F.3d 1434 (9th Cir. 1995); *NLRB v. Guess?*, 339 NLRB 432 (2003); *Wright Elec., Inc. v. NLRB*, 200 F.3d 1162 (8th Cir. 2000); and *Harvey's Wagon Wheel v. NLRB*, 550 F.2d 1139 (9th Cir. 1976).  Allegiant argues, however, that courts have generally rejected the assertion of a specific "NLRA privilege" or "internal union privilege" where the requested information or documents do not implicate the First Amendment right of association of employees or union members.  *See Patterson v. Heartland Industrial Partners, LLP*, 225 F.R.D. 204, 206-207 (N.D. Ohio 2004); *International Brotherhood of Teamsters, Airline Division v. Frontier Airlines*, 2012 WL 1801979, *5-6 (D.Colo. 2012).

In this case, the Union has not submitted any declarations from pilots, or AAPAG or Union members, attesting to any previous harassment by Allegiant, or the chilling effect that disclosure of the information and documents sought by Allegiant would have on their participation in collective bargaining activities.  Allegiant therefore argues that the Union has not made a *prima facie* showing for application of the privilege.  In *Local 491, Police Officers v. Gwinnett County, Ga.*, 510 F.Supp.2d 1271, 1295 (N.D.Ga. 2007), the court noted that in *In re Grand Jury Proceedings*, 842 F.2d 1229, 1236 (11th Cir. 1988), the Eleventh Circuit suggested that a more lenient showing applies to a targeted governmental investigation of an organization.  The court also cited *Pollard v. Roberts*, 283 F.Supp. 248, 258 (D.C.Ark. 1968), aff'd per curium 393 U.S. 14, 89 S.Ct. 47 (1968) that a prosecutor's attempt to subpoena the names of contributors to a political campaign was unconstitutional despite no evidence that any individuals had yet been subjected to reprisals on account of the contributions "'because it would be naive not to recognize that the disclosure of the identities of contributors to campaign funds would subject at least some of them to potential economic or political reprisals of greater or lesser severity.'"  The court in *Local 491, Police Officers* stated concerns about the economic vulnerabilities of public employees have led courts to more easily find the presence of a chilling effect on the disclosure rules imposed on public employees.  In *Patterson v. Heartland Industrial Partners, LLP*, 225 F.R.D. 204, 206 (N.D. Ohio 2004), the union argued that plaintiffs' documents requests would result in the disclosure of the names of union

1    supporters which could potentially result in reprisals against those individuals.  The court appeared

2    to recognize that the First Amendment privilege could apply to plaintiff's requests, but did not apply

3    because the plaintiffs had agreed that the names and other identifying information of union

4    supporters could be redacted from any documents produced.

5           This case involves an ongoing dispute relating to the Union's attempts to negotiate a

6    collective bargaining agreement with Allegiant on behalf of its pilots.  The Union alleges that

7    Allegiant has repudiated provisions of the Pilot Work Rules in an effort to discredit the Union in the

8    eyes of the pilots.  Although Allegiant presumably disputes this allegation, the Court finds that the

9    disclosure of the identities of individual pilots who were or are members or supporters of AAPAG or

10   the Union in the midst of ongoing negotiations between Allegiant and the Union could reasonably

11   have a chilling effect on the pilots' exercise of their associational rights.  As in *Patterson*, however,

12   the potential harm to the pilots' associational rights can be avoided by not requiring the production

13   of AAPAG or Union membership lists, or redacting those portions of produced documents that

14   identify individual pilots.  If the Union has records showing whether AAPAG required or collected

15   dues from its members, such records can also be redacted so that relevant information regarding the

16   collection of dues is produced without disclosing the identities of the individual pilots or union

17   members.  Likewise, minutes of AAPAG meetings which contain information relevant to whether

18   the AAPAG acted in a representative capacity on behalf of the pilots or whether the Pilot Work

19   Rules was a binding agreement, can be produced without disclosing the identities of pilots who were

20   present at or spoke during the meetings.

21                                   **CONCLUSION**

22          Allegiant is reasonably entitled to obtain information and documents within the knowledge,

23   possession, custody or control of the Plaintiff that contain statements made by officers or

24   representative of AAPAG, or communications between the officers or representatives of AAPAG

25   and the Union, relating to whether AAPAG was the pilots' collective bargaining representative or

26   whether the Pilot Work Rules was a binding agreement with Allegiant.  Allegiant is also entitled to

27   obtain discovery relevant to whether AAPAG conducted itself like a union, such as by collecting

28   dues from its members.  Allegiant, however, is not entitled to *carte blanche* discovery of all

information and documents relating to the Union's efforts to negotiate a collective bargaining agreement on behalf of the pilots.  Nor is Allegiant entitled to obtain identities of Allegiant pilots who were/are members or supporters of AAPAG or the Union.  Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Responses to Written Discovery (#97) is **granted** as follows:

1.      Plaintiff is required to answer Defendant's interrogatories and produce documents responsive to Defendant's requests that are (a) within the knowledge, possession, custody or control of the Plaintiff, and (b) which relate to whether AAPAG was the pilots' collective bargaining representative or whether the Pilot Work Rules was a binding agreement with Allegiant.  Such records may reasonably include, but are not necessarily limited to minutes of meetings or communications among AAPAG officers and representatives, or between AAPAG and the Plaintiff, and records relating to the payment of dues by AAPAG members.

2.      Plaintiff is not required to identify or produce documents which identify Allegiant pilots who were or are members of AAPAG or the Plaintiff Union.  Plaintiff may redact the names or other identifying information of individual pilots/AAPAG or Union members that are contained in the records produced to Defendant.

3.      Plaintiff shall serve supplemental answers to interrogatories or responses to request for production within ten (10) days of the filing of this order.

DATED this 12th day of November, 2014.

GEORGE FOLEY, JR.
United States Magistrate Judge